IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **Alonzo Dean Shephard,** | **Case No. 1:24-cv-02039-PAB** |
| **Plaintiff,** | |
| -vs- | **JUDGE PAMELA A. BARKER** |
| **Warden Angela Stuff,** *et al.*, | **MEMORANDUM OPINION & ORDER** |
| **Defendants.** | |

Currently pending is *pro se* Plaintiff Alonzo Dean Shephard's ("Plaintiff" or "Shephard") Motion for Leave to Proceed *In Forma Pauperis* ("IFP Motion"). (Doc. No. 2.) For the following reasons, Plaintiff's IFP Motion is DENIED.

**I.    Relevant Facts and Procedural History**

On September 16, 2024, Shephard filed a Complaint against Defendants in the United States District Court for the District of Columbia, asserting various civil rights claims. (Doc. No. 1.) That same day, Shephard also filed his IFP Motion in the same court. (Doc. No. 2.) On November 21, 2024[1], the assigned district judge issued an Order Transferring the Case to the United States District Court for the Northern District of Ohio ("Transfer Order"). (Doc. No. 3.)

In her Transfer Order, the originally assigned judge explained that Shephard is barred from proceeding *in forma pauperis* ("IFP") having accumulated at least three strikes under 28 U.S.C. § 1915(g). (*Id.*) Thus, the judge determined that Shephard's IFP application could not be granted

---

[1] The Transfer Order was signed by the originally assigned judge on November 20, 2024, but was not filed on the docket until November 21, 2024.

absent a finding that he is "under imminent danger of serious physical injury." (*Id.*) Although the judge noted that Shephard's Complaint included allegations that he was being denied food, water, and treatment for medical conditions, she concluded that the District of Columbia was not properly situated to resolve Shephard's claims arising from the conditions of his confinement in Ohio. (*Id.*) Accordingly, the judge ordered that Shephard's case be transferred to this Court. (*Id.*)

On November 21, 2024, Shephard's case was assigned to the undersigned judge. (*See* Doc. No. 4; 11/21/2024 Docket Entry.) The case was automatically referred to the *pro se* staff attorney's office for review. (*See* 11/21/2024 Docket Entry.) On January 2, 2025, the *pro se* staff attorney's office completed its review of Shephard's Complaint and determined that the case was not subject to summary dismissal. (*See* 1/2/2025 Docket Entry.) On January 3, 2025, this Court evaluated Shephard's Complaint and held a telephonic hearing that afternoon to discuss what it determined was a request for a temporary restraining order ("TRO"). (Doc. No. 5.) Specifically, this Court ordered Shephard, the warden of Richland Correctional Institution, and counsel for the warden to attend the telephonic hearing. (*Id.*) On January 3, 2025, at 2:00 p.m., the following individuals participated in the call: Shephard, Defendant Warden Angela Stuff ("Warden Stuff"), Senior Assistant Attorney General Marcy A. Vonderwell ("Attorney Vonderwell"), and ODRC in-house counsel Lauren Chalupa. (Doc. No. 6.)

After conducting the telephonic hearing, this Court concluded that Shephard was not under imminent danger of serious physical injury and that a TRO was not warranted. (*Id.*) The Court found, and Shephard agreed, that Shephard had access to water and ice machines. (*Id.*) Next, the Court found, and Shephard agreed, that Shephard had access to food in the dining hall by swiping his inmate card while proceeding through the chow line just like the other prisoners—including those who are

2

disabled or in wheelchairs like Shephard—and that Shephard could designate someone to assist him while going through the line. (*Id.*) However, Shephard complained that he should be able to have someone go through the line for him and bring the food to him at a table. (*Id.*) As for medical care, Attorney Vonderwell represented that Shephard has access to medical care, but that he has repeatedly refused medical care since 2022. (*Id.*) Finally, Shephard discussed the assault by another inmate referenced in his Complaint and represented that the situation had calmed down, he was fine, and that he does not want any changes in his "cube" even though that other inmate is still in his cube. (*Id.*)

During the telephonic hearing, the parties agreed to the following steps. First, Warden Stuff agreed to schedule Shephard for a medical appointment to obtain bloodwork on January 6, 2025, and Shephard agreed to attend that medical appointment. (*Id.*) Second, Attorney Vonderwell agreed to produce medical records to the Court for in-camera review and agreed to provide Shephard with a copy of such records. (*Id.*) Third, Attorney Vonderwell agreed to review footage of the cafeteria dining area and provide any relevant footage to the Court for in-camera review. (*Id.*) Fourth, Attorney Vonderwell agreed to ensure that legal mail procedures were being followed with respect to Shephard. (*Id.*) Finally, the Court informed Shephard of his obligations to conduct service upon the named Defendants and that the Clerk's Office would be sending him, via mail, the following documents: (1) a blank copy of each form necessary for service; (2) a copy of the Northern District of Ohio Guide for Pro Se Litigants; and (3) a copy of the docket sheet. (*Id.*)

On January 7, 2025, Attorney Vonderwell filed a status report ("First Status Report") to update the Court on developments since the telephonic hearing. (Doc. No. 8.) The First Status Report

3

provided that Shephard had refused medical treatment 24[2] times between January 1, 2022 and December 31, 2024. (*Id.*) It was further noted that there was no medical evidence that the protocols set forth for the management of hunger strike or missed meals had been implemented for Shephard. (*Id.*) Shephard's medical records were sent to the Court that same day on January 7, 2025. Next, the First Status Report provided that Shephard had agreed to receive medical care and have blood work drawn. (*Id.*) The First Status Report then explained that the chow line was ADA accessible—including wheelchair accessible, as several individuals in wheelchairs utilized it daily. (*Id.*) However, the First Status Report elaborated that to maintain prison and inmate safety and to prevent the theft of meals or fraudulent uses of inmate ID badges, all inmates must be present in the chow hall and must present their badge to be served a meal unless excused for medical or security reasons. (*Id.*) Shephard did not have any medical orders to receive a specific diet or medical accommodations. (*Id.*) Finally, the First Status Report provided that it was not feasible to review hundreds of hours of raw video footage of the chow line, but that instead, the records of Shephard's inmate badge being swiped in the chow line would be provided to the Court. (*Id.*) The First Status Report included various attached documentation, including numerous declarations and a list of Shephard's commissary purchases for the previous twelve months. (*Id.*) On January 10, 2025, the Court issued

---

[2] The First Status Report indicates that Shephard refused medical treatments 24 times between January 1, 2022 and December 31, 2024. (Doc. No. 8 at PageID #9.) However, the declaration of healthcare administrator Trena Butcher—attached to the First Status Report—provides that Shephard refused medical treatment 25 times during this same period, rather than 24. (Doc. No. 8-1 at PageID #19.) Further, the declaration notes that Shephard's medical records total 1935 pages, and that a "summary of the *first 243 pages* demonstrates that Inmate Shephard refused medical treatment 25 times between January 1, 2022 and December 31, 2024." (*Id.* (emphasis added).) In other words, Shephard's high number of medical refusals were prevalent in only a fraction of his records. The Court has reviewed Shephard's medical records submitted by Attorney Vonderwell and verifies that he has refused medical treatment repeatedly during the cited timeframe.

4

an Order requesting further documentation of Shephard's recent medical appointments and the chow line records of his inmate badge being swiped. (*See* 1/10/2025 Docket Entry.)

On January 17, 2025, Attorney Vonderwell filed a second status report ("Second Status Report"). (Doc. No. 9.) The Second Status Report provided that Shephard attended his bloodwork appointment on January 6, 2025, and also attended dental appointments on January 10, 2025 and January 14, 2025. (*Id.*) However, Shephard was scheduled for a follow-up appointment regarding his earlier blood work on January 14, 2025, and once again refused to attend the appointment. (*Id.*) The refusal was captured on body-worn camera. (*Id.*) Finally, the Second Status Report provided the chow line data regarding the frequency of Shephard's inmate badge being swiped. (*Id.*)

II.     **Law and Analysis**

Any person may seek leave to proceed *in forma pauperis* ("IFP") and commence an action without prepayment of fees or security. *See* 28 U.S.C. § 1915(a)(1). Under 28 U.S.C. § 1915, an individual seeking to proceed IFP must "submit[] an affidavit that includes a statement of all assets such prisoner possesses that the person is unable to pay such fees or give security therefore. Such affidavit shall state the nature of the action … and affiant's belief that the person is entitled to redress." *Id.* If a prisoner seeks to bring a civil action without prepayment of fees or security, they must "submit a certified copy of the trust fund account statement (or institutional equivalent) for the prisoner for the 6-month period immediately preceding the filing of the complaint … obtained from the appropriate official of each prison at which the prisoner is or was confined." *See* 28 U.S.C. 1815(a)(2).

A prisoner is prohibited from bringing a civil action without prepayment of fees or security if "the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought

an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury." *See* 28 U.S.C. § 1915(g). "The decision to grant or deny an application to proceed *in forma pauperis* lies within the sound discretion of the district court." *Powell v. Alcoa High School*, 2010 WL 3087387 at *2 (E.D. Tenn. Aug. 5, 2010) (quoting *Flippin v. Cobuyn*, 107 Fed. Appx 520, 521 (6th Cir. 2004)); *see also Rivera De Jesus v. DLJ Properties, LLC*, 2022 WL 17098648 at *2 (E.D. Tenn. Nov. 2, 2022).

In the instant case, Shephard's request for leave to proceed IFP is denied for several reasons. First, the Court finds that Shephard's IFP application is deficient. Because Shephard is currently incarcerated, he was required to include a certified copy of his trust fund account statement (or institutional equivalent) for the 6-month period immediately preceding the filing of his Complaint. *See* 28 U.S.C. § 1915(a)(2). Yet, he attaches no account statements to his application. (Doc. No. 2.) Further, Shephard's was required to "state the nature of the action … and [his] belief that [he] is entitled to redress" in his affidavit. *See* 28 U.S.C. § 1915(a)(1). His affidavit includes no mention of the nature or merits of his case. (Doc. No. 2.)

Moreover, even if Shephard's application was not deficient, the Court finds that he would still be prohibited from proceeding IFP because he has accumulated at least three strikes under 28 U.S.C. § 1915(g). Shephard is a serial frivolous filer who has filed multiple frivolous lawsuits previously and has been barred from proceeding IFP under the three strikes rule set out in 28 U.S.C. § 1915(g). *See, e.g.*, *In re Shephard*, 2003 WL 21658680 (D.C. Cir. July 10, 2003); *Shephard v. Wilkinson*, 27 F. App'x 526 (6th Cir. 2001); *Shephard v. Clinton*, 27 F. App'x 524 (6th Cir. 2001); *Shephard v.*

6

*Marbley*, 23 F. App'x 491 (6th Cir. 2001); *Jennings v. Rastaher*, 2014 WL 116672 (S.D. Ohio Jan. 10, 2014).

The Court also concludes that Shephard is not under imminent danger of serious physical injury. *See* 28 U.S.C. § 1915(g). First, at the telephonic hearing held on January 3, 2025, the Court determined, and Shephard agreed, that he had access to water and ice machines. (Doc. No. 6.) Second, the Court has independently reviewed Shephard's medical records submitted by Attorney Vonderwell and concludes that Shephard has access to medical care but has consistently refused it since at least January 2022. (Doc. No. 8-1, PageID #19–20.) Finally, the Court determines that Shephard has access to food. At the telephonic hearing, Shephard agreed that he had access to food in the dining hall—like the other inmates including those in wheelchairs—by swiping his inmate card while proceeding through the chow line. (Doc. No. 6.) The fact that Shephard complains that he should be able to have someone go through the line for him and bring the food to him does not equate to him not having access to food. (*Id.*) Indeed, this is evidenced by Shephard's daily use of the chow line up until April 26, 2024, showing that Shephard can access the chow line just as the other inmates do. (Doc. No. 9-1, PageID #53.) Therefore, based on its review of the submitted documentation and discussion during the telephonic hearing, the Court concludes that Shephard is not under imminent danger of serious physical injury.

Because Shephard has accumulated at least three strikes under 28 U.S.C. § 1915(g) and is not under imminent danger of serious physical injury, he is barred from proceeding *in forma pauperis* in this action. Accordingly, and for all the reasons set forth above, the Court DENIES Shephard's IFP Motion. (Doc. No. 2.)

**III.    Conclusion**

7

For all the foregoing reasons, Plaintiff's IFP Motion in this case (Doc. No. 2) is DENIED pursuant to 28 U.S.C. § 1915(g), and his Complaint is DISMISSED. Plaintiff may reopen this case within thirty (30) days by first paying the full filing fee of $405.00 and then filing a Motion to Reopen. The Clerk's Office shall NOT accept any Motions or other documents for filing in this case, unless and until the filing fee has been paid in full within the thirty (30) day period specified here. This includes any proposed Motion to Reopen and any Motions for Reconsideration, Motions to Alter or Amend Judgment under Rule 59(e) or Motion for Relief from Judgment under Rule 60. The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.

**IT IS SO ORDERED.**

Dated: January 27, 2025
                                                    *s/Pamela A. Barker*
                                                    PAMELA A. BARKER
                                                    UNITED STATES DISTRICT JUDGE